215 F.Supp. 703 (1963)
Walter W. KOLMONEN, on his own behalf and in behalf of other members of Road Construction Laborers of Michigan, Local 1191 of the International Hod Carriers' Building and Common Laborers Union of America, AFL-CIO, Plaintiff,
v.
INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA, AFL-CIO, its officers, agents and members, and Road Construction Laborers of Michigan, Local 1191 of the International Hod Carriers' Building and Common Laborers Union of America, AFL-CIO, its officers and agents, Defendants.
Civ. A. No. 4391.
United States District Court W. D. Michigan, S. D.
March 30, 1963.
Morse, Kleiner & Burns, Grand Rapids, Mich., A. Robert Kleiner, Grand Rapids, Mich., of counsel, for plaintiff.
Zwerdling, Miller, Klimist & Maurer, Detroit, Mich., A. L. Zwerdling, Detroit, Mich., of counsel, for International Union.
Russell L. Swarthout, Detroit, Mich., for Local 1191.
FOX, District Judge.
Walter W. Kolmonen, plaintiff, for himself and other members of the Road Construction Laborers of Michigan, Local 1191 of the International Hod Carriers' Building and Common Laborers' Union of America, AFL-CIO, commenced this action on September 21, 1962. He named as defendants the International Hod Carriers' Building and Common Laborers' Union of America, AFL-CIO, its officers, agents, and members, the Road Construction Laborers of Michigan, Local 1191 of the International Hod Carriers' Building and Common Laborers Union of America, AFL-CIO, its officers and agents.
Plaintiff seeks in this District Court a post-election challenge to a local union election by claiming he and other similarly situated members were denied their equal right to vote in violation of the *704 Bill of Rights section of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) (1).[1]
Plaintiff alleges that he is a resident of the City of Calumet, Michigan, a member in good standing of both defendant unions.
Plaintiff alleges that in accordance with Article VI of the Uniform Local Constitution covering nomination and election of local union officers, the officers of Local 1191 proceeded to call for nomination and election of officers, as required by the Uniform Local Constitution. The election was held at the headquarters of the local union in Detroit, Michigan, on September 7, 1962, between the hours of 9:00 A.M. and 9:00 P.M. At that election 218 ballots were cast, and of those, 16 were void ballots. The total membership of the union is approximately 2,000 members.
Plaintiff claims violations of election procedures provided by Article VI of the Local Constitution in that the ballots were placed in the ballot box by the judges instead of by the voting members, as required by Section 3(e) (iii) of that Article, and that Section 3(j) of that Section was violated because the judges of the election did not wrap and seal the ballots at the time and place of the election.
Plaintiff alleges further that he was denied his equal right to vote as guaranteed by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411. Plaintiff claims that this denial results from the fact that plaintiff resides in the Upper Peninsula of Michigan and cannot practicably be in attendance in Detroit, Michigan, for election meetings because of the great distance involved and the expense and loss of work required to attend such meetings.
Plaintiff then prays that this Court issue an order to show cause to the defendants why a temporary restraining order should not issue suspending the results of the election held on September 7, 1962, and prohibiting a change in officers in the local union until such time as a new election has been directed by the General Executive Board of the International Union, or until the further order of this Court.
Plaintiff further asks that upon the hearing of the order to show cause, this Court issue a temporary restraining order, suspending the results of the election held on September 7, 1962, and prohibiting any change in the officers of the local union, until a new election is directed by the General Executive Board, or until the further order of this Court.
Finally, plaintiff prays that upon the hearing of this cause, the court declare the election held on September 7, 1962, to be invalid because the plaintiff and others similarly situated were denied their equal rights to elect officers, contrary to the Federal Statute and the International and Uniform Local Constitution of the defendants; further, that this court order a new election to be held for officers of the local union which will provide for referendum ballots, addition of polling places, or other means that will guarantee all members of the local union an equal right to vote.
An order to show cause was filed by this Court the same date, September 21, 1962. Hearing was set for the 28th of September, 1962, and was then adjourned to October 3, 1962.
On the same day, but subsequent to the filing of this complaint, plaintiff and other members in good standing in the local union, appealed to the General Executive Board of the International Union by letter, in accordance with Article XII, Section 8, of the Uniform Local Constitution, to set aside the election and order a new election because of the denial of *705 their equal right to vote, as mentioned above.
On October 3, 1962, the defendants in this action filed a motion to dismiss the complaint on the grounds: (1) that the Court lacks jurisdiction over the subject matter, and (2), that the complaint fails to state a claim upon which relief can be granted.
At the hearing on October 3, 1962, the Court refused to issue a temporary restraining order.
On October 19, 1962, plaintiff again appeared in District Court and filed an amended complaint, realleging the facts in the original complaint, and alleging further violations of the Local's Constitution.
On the same date, plaintiff also filed a motion to issue the restraining order prayed for in the complaint, on the grounds that the newly elected officers of the local exercised self-help without court authority and seized the offices and assets of the local.
A second hearing was set for October 22, 1962, at which time all the parties in this cause appeared and additional testimony and arguments were presented to the Court.
Plaintiff alleges that jurisdiction in this cause is based upon 29 U.S.C. § 412 of the Labor-Management Reporting and Disclosure Act of 1959, (hereinafter referred to as LMRDA) which provides:
"Civil action for infringement of rights; jurisdiction
"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."
Part of the Court's opinion from the bench on October 3, 1962, is as follows:
"* * * I have come to the conclusion, however, that the over-all general policy of self-regulation should be given an opportuity to function in this case."
The Court then stated that it was going to take the case under advisement for a thirty-day period. The opinion continues:
"I am satisfied from what was related to the court that the probability of the newly elected officers taking office on October 5 is presently in considerable doubt. The present officers, if they execute their declared intention, will sit tight unless and until they are moved by a superior force. I suppose that force might be an action at law or an action of the Executive Board of the Union. It occurs to me that those processes may draw in issue the validity of the election."
"I am satisfied that in post-election procedure, the Act of Congress has declared that the 480 Section [29 U.S.C. 483] is the exclusive process by which an election can be declared invalid.
"There is available to this plaintiff and his associates a remedy within the constitution of the union for testing the question of the equal opportunity problem before the Executive Board. There is a method for appeal which is available if the election process is to be challenged, and can be brought to the attention of the Executive Board for action before the election is held.
"* * * I am not foreclosing the opportunity for plaintiff to be heard on the issue of equal opportunity. The Executive Board of the International Union is before the court on a special appearance * * * and I am sure the court's views, expressed in this opinion, will be directed to the attention of the Executive Board *706 of the International, and if the International is as concerned about this principle of self-regulation as the circumstances in their office would indicate they might be, they probably will move with reasonable dispatch in the resolution of the problem before it."
A great number of cases have been filed in the courts seeking to have various portions of the LMRDA interpreted. No problem is more difficult than one arising from the overlap between 29 U.S.C. § 411(a) (1), and 29 U.S.C. § 481(e).[2]
Section 481(e) provides in part, as follows:
* * * * * *
"(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. * * *"
The Court noted in its first opinion the interplay between 29 U.S.C. § 411, and 29 U.S.C. § 480, etc., with particular reference to the right to vote and the challenge to an election after an election has been held. The Court noted at that time that the present case presents a post-election challenge.
29 U.S.C. § 411(a) (4)[3] allows the Court to require that any member before bringing an action exhaust the reasonable hearing proceedings within the union. These internal remedies are not to exceed a four months' lapse of time. The Court felt that having this in mind, taking the opinion under advisement for thirty days, was not unreasonable.
Other reasons for denying the temporary restraining order at the first hearing included the conclusion on the part of the Court that the plaintiff will not suffer irreparable damages as anticipated in the complaint; that the plaintiff is protected in his position on the prosecution of the equal opportunity to vote issue by the court retaining jurisdiction of the case; that the court was doubtful of its jurisdiction in the case at all.
On the 15th day of October, 1962, the General President of the International Union addressed a telegram to the attorney representing the defendant, which reads as follows:
"The following wire was this date sent to Local 1191: Under Article VI, Section 1(h) of the Uniform Local Constitution and under the law, following an election the newly elected officers are to be installed and assume the functions of their elected *707 positions, and such newly elected officers are to continue to occupy said offices pending the hearing and final determination of any appeal which might be filed with the General Executive Board of the International Union. Accordingly, you are hereby directed to comply with the Uniform Local Union Constitution and install the newly elected officers in their respective elective positions. Fraternally yours, Joseph B. Moreschi, General President."
The officers who were in office before the 16th day of October, received from the International on March 5, 1962, a memorandum entitled, "To All Affiliated Local Unions and District Councils". There was a covering letter and release on nomination and election procedure, issued by the International's General President and General Counsel. Particularly on Page 4, they refer to Section 1(h), Article VI, of the Uniform Local Union Constitution, which provides:
"All elected officers shall serve for a term of three years. The newly elected officers shall take the oath of office and be installed by the presiding officer at the first meeting after the election."
The old officers have raised the question as to the validity of the election which was held on September 7, 1962, claiming that their term had not expired, and that they still have an additional portion of the five-year term, to which they were elected in the first instance, to serve. They challenge the election which was held on September 7 on that and other grounds.
The directive to the local union affiliates from the General Counsel of the International Union obviously was motivated by the LMRDA, particularly by Section 481, subsection (b), which is as follows:
"Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing."
After the Landrum-Griffin Act became effective in 1959, this Congressional mandate was addressed to each local labor organization, and each local labor organization then had the obligation under the law to examine the term of office of their local officers. The three years would not be determined from the date of the effective date of the Landrum-Griffin Act, but rather it would be retrospective, as well as prospective. Each local organization had to determine whether or not any officer's term would exceed three years after the passage of that Act, and once a determination was made that an officer was holding beyond the term of three years, under the law, the local's officers had the obligation of calling an election.
It is therefore presumed that the election which was called on September 7 was pursuant to the mandate of the Act of Congress and pursuant, also, to the directive of the International's General Counsel, certainly instructing and advising the locals to conform to the law.
Plaintiff's challenge is post-election. It is addressed to a 411(a) (1) right, the equal right to vote. For what it is worth, I find that the election procedure, which required all members to go to the local's office in Detroit between the hours of 9:00 and 9:00 on the 7th of September and identify themselves to a named officer, the secretary-treasurer, by establishing or showing their credentials, did result in a denial of equal opportunity to vote to those members who were scattered throughout the State of Michigan, and particularly to this plaintiff, who was in Calumet, in the Upper Peninsula.
However, even admitting this, the question is whether this individual member can address himself to an action in the District Court and present it to the District Court for relief, that is, the relief of enjoining the officers elected at that election from taking office pursuant to the provisions not only of the Constitution, local and international, of the union, but also pursuant to the 480 sections of the LMRDA.
*708 The clear intent of Congress was that there should be a continuity of the management of the union's affairs; that even under a challenged election, the elected officers should take office, and that they should continue in office unless and until they were otherwise legally declared ineligible to hold office or another election held.[4]
Congress carefully considered the consequences of the multiplicity of suits by union members and the tremendous impact this would have upon the orderly management and control of a labor organization.
This could be a very effective means of hamstringing a labor organization in the management of its affairs, and Congress decided as a matter of policy, the best procedure would be action through a department of the United States Government which specializes in labor affairs, namely, the Secretary of Labor, the Department of Labor of the United States.
It also recognized the self-determination principle. It declared that, first of all, an aggrieved union member should seek relief through his own labor organization. If this procedure is such as to be completely frustrating, or if the union refuses to act within the period specified in the Act, then he may go to the Secretary of Labor.
This is very prudent, because the Secretary of Labor may through his offices mediate the disputed issue. The Department of Labor specializes in problems of labor management, and certainly has means of finding out even the interplay of politics which may be involved in the union organization and he may, by his superior knowledge and skill in this respect, avoid litigation and resolve the problem outside the court.
However, the channels of court are still available to the parties and the individual can go to the District Court through the Secretary of Labor. The plaintiff has urged upon the court, "Well, now, this is a 411(a) (1) case".
I am aware of the history of the so-called "bill of rights" section, and, that it was one of the last items included in the Act. There was great concern for the problem of protecting the individual's rights and seeing to it that the individual had an avenue through which he could safely express his grievances. The Act does balance out, or attempt to balance out, these problems.
There is a general section afterwards which says that the individual member can come into the District Court.[5] However, in a case of a post-election challenge to the validity of an election, it was the clear intent of Congress that this should be processed through the Department of Labor and that only the Secretary of Labor could invoke the jurisdiction of the District Court.[6]
*709 I have already indicated some of the solid reasons for this procedure as declared by Congress.
Examination of the legislative history of the LMRDA reveals that Congress considered allowing an individual to bring post-election proceedings into court and rejected the idea.
The present statute was introduced by Senator Kennedy, and known as the Kennedy-Irvin Bill, Senate .1555, 86th Congress, First Session 1959. An administration bill was introduced which called for enforcement by both the Secretary of Labor and individual members of the union. Senate Journal 748, 86th Congress, First Session 1959. The Kennedy-Irvin Bill was passed by the Senate and not the administration bill.
When the LMRDA was being considered in the House, an attempt was again made to change the Act to allow an individual to bring an action. See: 2 Legislative History of LMRDA of 1959, Page 1697. This provision was removed by the committee.
The court is of the opinion that 29 U.S.C. § 482 et seq. of the LMRDA preempted the post-election enforcement procedure. Any other interpretation would lead the court to declare that very particular language in 29 U.S.C. § 483[7] meaningless.
29 U.S.C. § 412[8] does provide that a person may come into a District Court for such relief, including injunction, as may be appropriate when there has been a violation of the rights guaranteed under Title I of the LMRDA. However, the court must be consistent and in being so, hold that this remedy provided a party whose rights have been violated, is available, if that party is challenging a right before a completed election.
When an election has been held, and a union member seeks to have the election declared invalid, he must follow the procedure as declared by the 480 sections of the LMRDA and file his complaint with the Secretary of Labor.
The court, therefore, sustains the defendants' motion to dismiss this action, on the grounds that this court lacks jurisdiction to hear the complaint of an individual member of the union when that individual seeks to have this court declare the election invalid.
An order may be entered accordingly.
NOTES
[1] 411(a) (1) "Equal rights.Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."
[2] Compare with 29 U.S.C. § 411(a) (1), as set out in footnote 1, the following portion of 29 U.S.C. § 481(e).
[3] "(4) Protection of the right to sue. No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legistive proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."
[4] "* * * (a) A member of a labor organization (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." 29 U.S.C. § 482.
[5] See 29 U.S.C. § 412, Page 705.
[6] "§ 483. Application of other laws; existing rights and remedies; exclusiveness of remedy for challenging election "No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."
[7] Refer to footnote 6.
[8] 29 U.S.C. § 412, quoted on Page 705.