325 F.2d 929
 Harold ROBINS, individually and on behalf of all other persons similarly situated, Plaintiff-Appellant,
v.
Martin RARBACK, as Secretary-Treasurer, or Morris Arbor, as Assistant Secretary-Treasurer, or Louis Caputo, as President, or Frank Bona, as Vice President of District Council No. 9, Brotherhood of Painters, Decorators and Paperhangers of America, and
Thomas Giunta, individually and as President, or William Cihelka, as Treasurer, or John W. Enright, as Financial Secretary, or John Steinbeck, as Recording Secretary of Local Union 892, Brotherhood of Painters, Decorators and Paperhangers of America, Defendants-Appellees.
 No. 78.
 Docket 28281.
 United States Court of Appeals Second Circuit.
 Argued October 18, 1963.
 Decided December 26, 1963.
 
 Burton H. Hall, New York City, for appellant.
 George Pollack, of Michael A. Buonora, New York City, for defendants-appellees.
 Before WATERMAN, HAYS and MARSHALL, Circuit Judges.
 HAYS, Circuit Judge.
 
 
 1
 The plaintiff moved for a preliminary injunction requiring certain procedures to be followed in a union election which was to be held on June 17, 1963. The district court denied the motion. Both the district court and this court denied motions to stay the election until the appeal from the denial of the preliminary injunction could be heard and decided. The election was held on June 17. It is clear that the appeal from the denial of a preliminary injunction is moot and must be dismissed.
 
 
 2
 In addition to denying the motion for a preliminary injunction the district court dismissed plaintiff's complaint and plaintiff also appeals from that action.
 
 
 3
 The complaint states two claims for relief, both assertedly based upon the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401ff (Supp. IV 1959-62). The first claim alleges, in effect, that plaintiff was wrongfully and improperly disciplined by the District Council of the union and seeks damages and an injunction against the Council and its officials. The second claim alleges a number of irregularities in union elections and seeks an injunction restraining the local union and defendant Giunta from committing certain enumerated "electoral abuses."
 
 
 4
 Apparently defendant made no motion to dismiss the complaint. However, the district court dismissed the complaint in its entirety, giving the plaintiff leave to file an amended complaint setting forth the claim of improper discipline. The only reason given by the court for dismissing this claim was that the complaint was not clear as to which allegations referred to this claim and which to the second claim. The court was in error in dismissing the complaint on this ground. 2 Moore, Federal Practice ¶ 12.08, at 2245-6 (2d ed. 1962). See Fed.R.Civ.P. 12(e).
 
 
 5
 The claim as to "electoral abuses" was dismissed on the ground that the Labor-Management Reporting and Disclosure Act gave the federal district courts no jurisdiction over such a claim. We agree that this claim fails to state grounds for relief under that Act and therefore affirm the order dismissing it.
 
 
 6
 The theory of the plaintiff is that Sections 101(a) (1), 29 U.S.C. § 411(a) (1) (Supp. IV 1959-62), and 102, 29 U.S.C. § 412 (Supp. IV 1959-62), provide the basis for the remedy he seeks. Section 101(a) (1) provides in pertinent part only that "Every member of a labor organization shall have equal rights and privileges within such organization * * to vote in elections * * *."
 
 
 7
 The plaintiff has not been denied the right to vote and makes no claim based on any such denial. But he would have us construe the language of the statute as granting authority to the federal courts to control and direct the entire conduct of union elections on the theory that the right to vote is a right to cast an "effective" vote, and that a vote cannot be effective unless the election is properly conducted in all its aspects. Thus the abuses which the plaintiff would have us correct under the authority of Section 101(a) (1) are, as listed in his prayer for relief:
 
 
 8
 "permitting any person other than the voter himself to handle a completed or filled out ballot prior to its being placed in the ballot box and before the time of counting ballots cast; permitting ballots to be marked by voters in any union election in any booth or other place that is not fully enclosed, on all sides, by a wall or curtain; permitting any person to vote in a union election without first subjecting his union book to examination by a proper election watcher, including the watcher or watchers appointed by opposition candidates; permitting any person to vote in a union election without first registering and producing identification. * * *"
 
 
 9
 If Section 101(a) (1) stood alone and was the only provision of the Act relating to elections we would be reluctant to hold that such a simple guaranty of the equal right to vote would carry with it the broad implications with which the plaintiff would freight it. Surely if Congress intended the federal courts to assume a general supervision over the conduct of union elections it would express that intent in terms which are at the same time more specific and more general than are to be found in Section 101(a) (1).
 
 
 10
 But we are not forced to construe Section 101(a) (1) as if it stood alone. For Title IV of the same Act, 29 U.S.C. §§ 481-483 (Supp. IV 1959-62), provides for the very extensive supervision for which the plaintiff argues. However, under Title IV the power of the courts with respect to union elections is hedged about with procedural safeguards. Under Section 402, 29 U.S.C. § 482 (Supp. IV 1959-62), review in the courts of election irregularities may be had only when (a) the complaining member (1) has exhausted his remedies within the organization or has failed to get a final decision within three months after invoking his internal remedies, (2) has filed a complaint with the Secretary of Labor within one calendar month thereafter and (b) the Secretary has (1) investigated the complaint, (2) found probable cause to believe that a violation has occurred and has not been remedied and (3) has brought an action to set aside the election. Pending a final determination the election is to be presumed valid and the affairs of the organization are to be conducted by the elected officers.
 
 
 11
 It seems most unlikely that Congress would have provided these elaborate protections against unjustifiable interference with internal union processes if it had intended at the same time that the courts should be free under Title I of the Act to reach the same result at the instance of the complaining member alone and without any requirement of exhaustion of remedies or investigation or finding by the Secretary.
 
 
 12
 Nothing found in the legislative history of the Labor-Management Reporting and Disclosure Act serves to illuminate the Congressional intent as to the relationship between Title I and Title IV. There is certainly nothing in that history which suggests that the protection of the right to vote in Title I authorizes the federal courts to enter freely upon the field of supervision of union elections, in total disregard of the limitations imposed on that power by Title IV.
 
 
 13
 We are cited to only two appellate decisions which are said to bear directly upon this issue. One from our own circuit, Boggia v. Hoffa, 41 CCH Lab.Cas. ¶ 16,732 (2d Cir. Dec. 19, 1960), is not officially reported because it was merely a ruling on a motion. Since the ruling contains no information as to the posture of the case and since no briefs were submitted, we are unable to ascertain what, if any, rule the court intended to lay down. We decline to accept this brief direction of the court as authority which is binding upon us with respect to the issue with which we are now faced. In Beckman v. Local 46, International Ass'n of Bridge Workers, 314 F.2d 848 (7th Cir. 1963), the Seventh Circuit did give a broad application to Section 101 (a) (1). We respectfully disagree with the result reached in that case.
 
 
 14
 The recently decided case of Harvey v. Calhoon, 324 F.2d 486 (2d Cir. 1963) holds merely that the plaintiff can enforce under § 102, the right expressly given by § 101(a) (1) "to nominate candidates." It does not hold that under the guise of protecting the right to nominate candidates the court can control all phases of a union election.
 
 
 15
 We hold that plaintiff stated no valid claim for relief under the Labor-Management Reporting and Disclosure Act and that his claim was properly dismissed.
 
 
 16
 Appeal from the denial of a preliminary injunction dismissed. Dismissal of the claim as to improper discipline reversed. Dismissal of the claim as to election abuses affirmed.
 
 
 17
 WATERMAN, Circuit Judge (concurring).
 
 
 18
 I concur in the dismissal here of the appeal from the denial below of a preliminary injunction. I concur in our reversal of the dismissal below of plaintiff's claim that he was improperly disciplined. I also concur in the majority's affirmance of the dismissal below of plaintiff's claim for relief from election abuses, but as I regard as incorrect my brothers' construction of Section 101(a) (1) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a) (1) (Supp. IV 1959-62), I am required to file this separate statement setting forth my views. In my judgment their construction of this important section of the "Bill of Rights" title of the LMRDA unduly constricts the right to vote that is therein guaranteed to union members.
 
 
 19
 In pertinent part Section 101(a) (1) states: "Every member of a labor organization shall have equal rights and privileges within such organization * * * to vote in elections or referendums of the labor organization * * *" The following section, Section 102, 29 U.S.C. § 412 (Supp. IV 1959-62), provides that civil actions may be brought in federal district courts by union members to enforce the rights assured by Section 101 when those rights have been violated.
 
 
 20
 I regard the Section 101(a) (1) voting right as being broad enough to protect union members from election practices which, if unchecked, would serve to render balloting at union elections a vain act. There is no language in Title IV of the Act, 29 U.S.C. §§ 481-483 (Supp. IV 1959-62), which persuades me, as my colleagues have been persuaded, that Section 101(a) (1) should be given any narrower a construction. My view of the relation between Section 101(a) (1) and Title IV accords with the position recently taken by the only other U. S. Court of Appeals which has had occasion to consider the relationship. In Beckman v. Local 46, International Ass'n of Bridge Workers, 314 F.2d 848 (7 Cir. 1963), the Seventh Circuit decided that union members who had alleged the printing of an unexplained surplus of ballots and ballot box tampering at a union election had alleged a denial of the Section 101(a) (1) voting right.[1] The court incorporated into its opinion the following statement of the judge below: "Neither reason nor logic supports the suggestion that plaintiffs must now await the completion of the election and the counting of the purported ballots and then seek their remedy under Title IV. I think the statutory scheme of Title I would be defeated if the Act must be so construed, and applied." Id., 314 F.2d at 850.
 
 
 21
 If the right to vote guaranteed by Section 101 (a) (1) is to be at all meaningful the section must be regarded as demanding more than a simple provision in a union's constitution or by-laws formally stating that all members are entitled to cast a ballot. The majority's interpretation of this section, if my assessment of it is correct, reduces the guarantee of the right to vote to little more than this. Presumably the majority might also permit judicial intervention when members are actually denied access to the polling place. But even such a denial when accompanied by some explanation on the part of the defendants as, for example, a claim that the plaintiff voter had failed to identify himself properly, might present problems of election procedure creating issues of voting rights which the majority would regard as being outside the proper province of a court to adjudicate.[2]
 
 
 22
 I am not persuaded by the majority's argument that the restrictions on election procedures set forth in Section 401, 29 U.S.C. § 481 (Supp. IV 1959-62), and the provision for invalidating elections through suit by the Secretary of Labor in Section 402, 29 U.S.C. § 482 (Supp. IV 1959-62), indicate a congressional intent to foreclose judicial inquiry into election abuses in a suit based on the deprivation of the right to vote. It is only when an election is sought to be examined after it has been declared concluded that a union member is required to refrain from bringing his own action to enforce his right to vote and to await suit by the Secretary of Labor, for Section 403, 29 U.S.C. § 483 (Supp. IV 1959-62), explicitly states in part: "The remedy provided by this subchapter [a suit by the Secretary of Labor] for challenging an election already conducted shall be exclusive." (Emphasis supplied.) I also have difficulty with my brothers' intimation that federal judges should not correct union election abuses as Congress somehow believed interference designed to assure this type of fairness in union internal affairs required a measure of expertise not possessed by judges. To the contrary, the entire bundle of member rights guaranteed by Sections 101(a) (1) and 101(a) (2) are, according to those sections, subject to reasonable union rules and regulations, and Congress placed the responsibility for determining the reasonableness of such rules and regulations squarely upon the courts. To me, this demonstrates that Congress had faith that the federal courts had vision enough to deal with the most vital questions that can arise from the administration by a union of its internal affairs. Indeed, even the task of determining the proper scope of the Section 101 rights themselves would seem to involve important considerations as to the legitimate conduct of a union's internal affairs. See Harvey v. Calhoon, 324 F.2d 486 (2 Cir., 1963) (dealing with the right to nominate candidates); Salzhandler v. Caputo, 316 F.2d 445 (2 Cir. 1963), cert. denied 84 S.Ct. 344 (Dec. 9, 1963) (dealing with the right of free speech). And even in post-election suits brought by the Secretary of Labor the ultimate decision as to whether a new election is required rests with the courts. Therefore it is my belief that the determination of claims that a union's election practices operate to deny the union members the right to vote is not fraught with such peculiar problems as to place it beyond the legitimate scope of judicial inquiry.
 
 
 23
 Accordingly, in my view, a court in this kind of case would ordinarily be obliged to consider in detail the allegations made in the union member's complaint in order to determine whether the election practices claimed to exist are such as effectively to disenfranchise union members. Here, however, this additional task need not be undertaken, for there is an alternative ground which the majority opinion does not discuss upon which the lower court's dismissal of the claim of election abuses can be affirmed. Had my colleagues based their decision on the alternative ground, and had not undertaken to restrict the Section 101 voting right, I would not have been compelled to state my views as to the proper construction of that section. I hold that the lower court's dismissal of that portion of the complaint that dealt with election abuses should be affirmed on the basis of the language of Section 102 of the Act. That section, which provides for the enforcement of rights guaranteed in Section 101, confines the granting of relief to situations where "rights have been violated." Plaintiff is seeking relief from a violation of his voting right which he predicts will take place in the future. The complaint states that the next election to be conducted by defendant union will not be until June of 1964. A union member cannot seek a permanent injunction under Section 102 to head off violations which he claims may take place at some future time.[3] Therefore the court below lacked jurisdiction over this particular claim.
 
 
 
 Notes:
 
 
 [1]
 Beckman is apparently the only Court of Appeals decision in which there has been discussion of the issues before us, and I agree with my brothers that our decision in Boggia v. Hoffa is without precedential value. In Mamula v. United Steelworkers of America, 304 F.2d 108 (3 Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962), the Third Circuit had occasion to consider the interplay between § 101(a) (1) and Title IV, but it appears that the issue dealt with there was whether the election rules set forth in § 401, 29 U.S.C. § 481 (Supp. IV 1959-62), could be used as a basis for a suit under § 102. The question whether union election practices so repressive as effectively to disenfranchise members could be attacked by a § 102 suit was not discussed. Moreover, the judgment which was reversed in that decision was one setting aside an election which had already been conducted. Also, there was an alternative holding to the effect that the plaintiff, suing in his capacity as a candidate for union office rather than in his capacity as a union member, lacked standing to sue under § 102
 
 
 [2]
 It is not difficult to think of election procedures that in a more roundabout fashion would serve effectively to bar members from a polling place. In Kolmonen v. International Hod Carriers' Union, 215 F.Supp. 703 (W.D.Mich.1963), the defendant union's members were scattered throughout the state of Michigan. The election procedures that were there attacked required all members who desired to vote to present themselves at the union's office in Detroit on a given day. This was found by the court to constitute a denial of the equal right to vote under § 101(a) (1), on the ground that the procedures discriminated against members living a substantial distance from that city. Id., 215 F.Supp. at 707. The complaint was dismissed, however, inasmuch as the plaintiff had waited until after the completion of the election and had then, too late, sought, by his own suit, to have the court invalidate the election. His sole remedy under those circumstances was correctly deemed to be through a suit by the Secretary of Labor under Title IV
 
 
 [3]
 Thus, the use of Section 101(a) (1) in attacking election practices would be confined to those limited situations in which the election procedures have been so far implemented as to have actually resulted in an infringement of members' rights, but where the election has not yet become an accomplished fact. See Beckman v. Local 46, International Ass'n of Bridge Workers, supra; Young v. Hayes, 195 F. Supp. 911 (D.D.C.1961). Of course, in situations where a union has enacted provisions into its constitution or bylaws which are barred by the LMRDA, a pre-election suit may be brought to enjoin the conduct of an election to be held pursuant to such provisions. See Harvey v. Calhoon, supra. Finally, the right to bring a pre-election suit to compel compliance with a union's constitution and by-laws is explicitly preserved by § 403 of the LMRDA