228 F.Supp. 276 (1964)
Walter T. COLEMAN, Walter L. Cox, David F. Lynch, and Carolyn L. Klucz, Plaintiffs,
v.
BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES and George M. Harrison, individually and as Chairman of said Brotherhood's Grand Executive Council, Defendants.
United States District Court S. D. New York.
March 31, 1964.
*277 Godfrey P. Schmidt, New York City, for plaintiffs.
Paul G. Reilly, New York City, James L. Highsaw, Jr., Edward J. Hickey, Jr., Washington, D. C., for defendants.
BONSAL, District Judge.
On November 18, 1963, plaintiffs, alleging that they are members in good standing of the defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (Brotherhood), filed a complaint against the Brotherhood and George M. Harrison (Harrison) individually and as chairman of the Brotherhood's Grand Executive Council. The complaint asserts jurisdiction of the Court under Section 102, Title I, and Sections 501(a) and (b), Title V, of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 412 and 501(a) and (b).
Plaintiffs, alleging that they are bringing the action for themselves and for all members of the Brotherhood, seek:
(a) a declaratory judgment declaring that the procedure which resulted in the enactment of Resolution No. 611 at the Brotherhood's Twenty-Second Regular and Eighth Quadrennial Convention in Los Angeles, "was illegal and therefore null and void under the Act of 1959 [LMRDA] and under the defendant Brotherhood's Constitution; and that said Resolution No. 611 is equally illegal".
(b) a preliminary and a permanent injunction enjoining defendants from carrying Resolution No. 611 into effect; and
(c) such other and further relief as to the Court seems just, including payment to plaintiffs' counsel of reasonable attorneys' fees.
Defendants have moved, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, to dismiss the complaint or, in the alternative, for summary judgment.
Plaintiffs have moved, pursuant to Rule 56 of the Federal Rules of Civil *278 Procedure, for summary judgment and to permit the intervention of George E. Cook as a party plaintiff.
Finally, plaintiffs have moved by an order to show cause for an injunction pendente lite enjoining the defendants from conducting a trial of charges pending against plaintiff Coleman, from expelling plaintiffs from the defendant Brotherhood and from taking other specified actions against plaintiffs.
It appears that defendant Harrison had been Grand President of the Brotherhood for many years. Defendant Harrison states that some months prior to the 1963 Convention at Los Angeles he indicated to other officers and representatives of the Brotherhood that due to his advancing years he wished to be relieved of the arduous duties of Grand President; that at the suggestion of these officers and representatives he agreed to serve the Brotherhood in a less exacting capacity, and that Resolution No. 611 was then prepared following discussions among Brotherhood officials. According to defendants, Resolution No. 611 was presented to the Convention by members of the Grand Executive Council and Grand Lodge Board of Trustees on May 13, 1963, and was then referred to the Committee on the Grand Lodge Constitution and Laws, which Committee reported back to the Convention through its chairman, on May 15, 1963. The Proceedings of the Convention show that Resolution No. 611 was adopted by the Convention on May 15, 1963, by a show of hands, with a few dissents being recorded. As adopted, it read as follows:
"WHEREAS, George M. Harrison has expressed a desire to retire from the office of Grand President of our Brotherhood after having served in our Organization for approximately forty-five years, thirty-five of these years as Grand President, and during all of these years he has been held in high esteem and great respect, his integrity has never been questioned.
"He has rendered outstanding service and given exemplary leadership to our Organization. We enjoy a position of pre-eminence with great prestige  both national and international  and we are known for the integrity and responsibility and ethical standards, practiced and observed by our Brotherhood, throughout the American Labor Movement. Our progress is improving the economic and social conditions of our members and the gains achieved generally in their behalf places us in a position of leadership in our segment of international Labor.
"The participation of George M. Harrison in the many private and governmental agencies and organizations concerned with economic, social and educational matters and international affairs has redounded to the interest and benefit of our Brotherhood, its members and Labor in general, and
"WHEREAS, the retirement of George M. Harrison from the office of Grand President at this time would deprive the Brotherhood and its members of his vast knowledge, experience, leadership and prestige gained from a background of forty-five years in the Labor Movement and national and international affairs, this would be a tremendous loss to the Brotherhood and would be contrary to the best interest of our members; and
"WHEREAS, it is the desire and intent to assure to the Brotherhood the continuing services of George M. Harrison, therefore be it
"RESOLVED, That the office of `Chief Executive' is hereby created for that purpose, effective as of July 1, 1963, and subject to the election procedures of the Constitution, and be it further
"RESOLVED, that the `Chief Executive' is empowered and authorized *279 to exercise at any time he deems necessary any or all of the duties and prerogatives set forth in the Constitution, Statutes for the Government of Local Lodges and the Protective Laws vested in the Grand President and his decisions shall be for all purposes contained in the Constitution, Statutes and Protective Laws as though they were the decisions of the Grand President.
"Salary to be paid to George M. Harrison as `Chief Executive' shall be the same as he now receives as Grand President."
Later during the Convention, on May 16, when the new officers were nominated and elected, defendant Harrison was nominated as Chief Executive Officer under Resolution No. 611 by plaintiff Coleman. No other nominations were made for this office although an opportunity was given for such nominations, and a vote having been taken by ballot, the chairman of the Tellers Committee reported on May 17 that defendant Harrison had been elected to the office of Chief Executive Officer, having received 1704 votes out of a total "voting strength" of 1803. The Convention then adopted and approved the Tellers Committee report. The minutes of the Convention disclose that defendant Harrison yielded the chair to one of the Vice Grand Presidents of the Brotherhood, both on the occasion of the adoption of Resolution No. 611 and on the occasion of the nominations for the office of Chief Executive Officer thereunder. It also appears that on both occasions plaintiff Coleman took the floor and made laudatory remarks with respect to defendant Harrison. Some time after the Convention, plaintiff Coleman was temporarily suspended from his office as General Chairman of Pan American World Airways System Board of Adjustment by defendant Harrison, pending disposition of charges of misappropriation and misuse of Brotherhood funds.
Plaintiffs maintain that Resolution No. 611 is null and void whether viewed as an amendment to the Brotherhood's Constitution or as a resolution. The complaint alleges that the adoption of Resolution No. 611 violated Section 27 of Article 13 of the Brotherhood's Constitution in that by providing for a new officer, the Chief Executive Officer, with the power at any time to assume the duties and prerogatives of the Grand President, the Resolution in effect sought to amend the Constitution which theretofore had provided for no such office; and that under Section 27 of Article 13 proposed amendments to the Constitution were required to be filed with the Grand President on or before April 1 next preceding the Convention and copies mailed to all delegates on or before April 20, and copies to be supplied to the Committee on Grand Lodge Constitution and Laws immediately on the convening of the Convention. The complaint states that this procedure was not followed with respect to Resolution No. 611 (par. 19). The complaint further charges that the Brotherhood's "time-honored custom" of requiring three readings of proposed amendments to the Constitution was not followed at the Los Angeles Convention with respect to Resolution No. 611 (par. 20), and that the Committee on Grand Lodge Constitution and Laws reported to the Convention at its beginning on all proposed amendments but failed to mention Resolution No. 611 (par. 26). The complaint alleges that Resolution No. 611 violated Section 9 of Article 8 of the Brotherhood's Constitution in that the Resolution was not confined to one subject and was not filed with the Grand President on or before April 10, 1963, as is required by Section 9 (par. 28). The complaint asserts that as a "mere `resolution'", Resolution No. 611 is null and void under Sections 47 and 67 of Robert's Rules of Order and under the Brotherhood's Constitution (par. 29). Plaintiffs further charge that the election of defendant Harrison did not comply with the Constitution in that he was not elected by secret ballot and, indeed, that he was not nominated, *280 "but legislated", to his office. (Par. 31.)
The complaint goes on to allege that defendants violated their duty as fiduciaries under Title V, Section 501(a), LMRDA,[1] in suppressing needed information and knowledge respecting Resolution No. 611 before it was voted upon, and in rushing the Resolution through in disregard of the Constitution and custom, and that defendant Harrison "notably lacked that candor and honesty and that respect for his duty as trustee which the Statute imposes", (par. 35). Plaintiffs charge violation of Title IV, Section 401(f), LMRDA, 29 U.S.C. § 481 (f),[2] in that defendants violated the Constitution and by-laws of the Brotherhood, (par. 36); and violations of the rights guaranteed to the members under Title I, Section 101(a) (1), LMRDA, 29 U.S. C. § 411(a) (1),[3] the so-called Labor Bill of Rights provision, in that the Delegates to the Convention "were not accorded with respect to Resolution No. 611 the same opportunities and advantages which they enjoyed with respect to all of the other proposed amendments" (Par. 37.)
A threshold problem is presented by the contention of defendants that plaintiffs were suspended from membership in the Brotherhood prior to the filing of the complaint for failure to pay dues, and that they therefore do not have standing to maintain this action. Plaintiffs oppose defendants' contention, alleging that they paid their dues and charging that their memberships were suspended and other actions were taken against them in reprisal for their refusal to follow the dictatorial methods of defendant Harrison and the assertion of their rights as members of the Brotherhood. Each side has submitted documentary evidence in support of its position.
The action authorized by Section 501(b), which is the section upon which plaintiffs primarily rely for jurisdiction, is an action by a member for the benefit of the labor organization, and if plaintiffs are not members of the Brotherhood, *281 they lack standing to bring this action under Section 501(b).[4]
It is not necessary to resolve the issue of plaintiffs' membership status, however, because Section 403 of Title IV, 29 U.S.C. § 483, presents an insurmountable obstacle to the maintenance of this action by plaintiffs. Section 403 provides in applicable part:
"* * * The remedy provided by [Title IV] for challenging an election already conducted shall be exclusive."
The parties recognize that insofar as the present action challenges the election of defendant Harrison as Chief Executive Officer of the Brotherhood, the action is barred by Section 403. This is because the remedy available to a union member under Section 402 of Title IV for challenging an election already conducted the remedy which Section 403 makes exclusiveis the filing of a complaint with the Secretary of Labor.[5] See Kolmonen v. International Hod Carriers' Building and Common Laborers' Union of America, AFL-CIO, 215 *282 F.Supp. 703 (W.D.Mich.1963), cited with approval by Waterman, J., concurring in Robins v. Rarback, 325 F.2d 929, note 2 at 932-933 (2d Cir. 1963); Acevedo v. Bookbinders & Machine Operators Local No. 25, 196 F.Supp. 308 (S.D.N.Y.1961); Gammon v. International Association of Machinists, 199 F.Supp. 433 (N.D.Ga. 1961); cf. Mamula v. United Steelworkers of America, 304 F.2d 108 (3d Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962).
There is, of course, no dispute that the election of defendant Harrison as Chief Executive Officer of the Brotherhood was conducted prior to the commencement of this action. Plaintiffs seek to avoid the effect of Section 403 by arguing that the purpose of this action is to invalidate Resolution No. 611, and is not to challenge defendant Harrison's election.
It is the Court's view, however, that the sole effect of the present action is to challenge defendant Harrison's election as Chief Executive Officer of the Brotherhood, and that, accordingly, Section 403 bars the maintenance of this action and requires the dismissal of the complaint.
The complaint does not by its terms seek to invalidate defendant Harrison's election. It seeks a declaratory judgment invalidating Resolution No. 611 and an injunction enjoining defendants from carrying the Resolution into effect.[6] It is obvious, however, that the effect of the invalidation of Resolution No. 611 and an injunction enjoining defendants from carrying out the Resolution would be to set aside defendant Harrison's election, since defendant Harrison would thereby be deprived of his office.
The election was not, as plaintiffs contended upon argument, "a minor episode in a long process". It was the intended result of Resolution No. 611. Indeed, it is only if an election is held pursuant to Resolution No. 611 that any harm can result from the Resolution. Cf. Gammon v. International Association of Machinists, supra, 199 F.Supp. at 436. By its terms the Resolution was "subject to the election procedures of the Constitution". However, the Resolution assumed that defendant Harrison would fill the office of Chief Executive, and for this reason the adoption of the Resolution was equivalent, as a practical matter, to defendant Harrison's election as Chief Executive Officer.[7]
*283 If defendant Harrison is improperly occupying the office of Chief Executive because of the invalidity of Resolution No. 611, the remedy is to be found under Section 402. That section contemplates the holding of a new election where appropriate, and in the present case this might involve the resubmission of Resolution No. 611 to the Brotherhood "under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization", as provided in Section 402(c). As plaintiffs recognized upon argument, if the Brotherhood adopts Resolution No. 611 in accordance with its Constitution, By-Laws and customs, defendant Harrison can properly occupy the office of Chief Executive with the powers and salary provided in the Resolution.
Since this action challenges an election already conducted and is barred by Section 403, it is immaterial whether the complaint states a claim under either Section 101 of Title I, LMRDA, or Section 501 of Title V, LMRDA. Kolmonen v. International Hod Carriers' Building and Common Laborers' Union of America, AFL-CIO, supra; Acevedo v. Bookbinders & Machine Operators Local No. 25, supra.
Neither Harvey v. Calhoon, 324 F.2d 486 (2d Cir. 1963), cert. granted 375 U.S. 991, 84 S.Ct. 633, 11 L.Ed.2d 478 (Jan. 20, 1964), nor Robins v. Rarback, 325 F.2d 929 (2d Cir. 1963) involved the application of Section 403. Neither action involved a challenge to an election already conducted. The issue in each action was whether plaintiff stated a claim under Title I upon which he could maintain an action or whether the only claims stated by plaintiff were claims under Title IV upon which he could not bring an action. The Court held in Harvey that a claim was stated under Title I, and in Robins that it was not.
The Court doubts that the complaint states a claim under either Section 101 of Title I or Section 501 of Title V. A reading of the minutes of the Convention in Los Angeles does not disclose any obvious violation of the equal rights and privileges of the members of the Brotherhood to nominate candidates and to vote at elections, nor any denial of their rights of free speech at the Convention, which are protected under Title I. The members' equal rights and privileges, which are rights and privileges vis-a-vis one another, are not violated by different treatment accorded Resolution No. 611 from the other resolutions that were presented to the Convention.
As for Title V, the Court sees nothing in the complaint to indicate that defendant Harrison was wilfully violating his fiduciary duties with respect to the money and property of the Brotherhood. On the contrary, the circumstances surrounding the adoption of Resolution No. 611 would appear to be a human effort on the part of the Brotherhood to recognize the past services rendered by a distinguished leader of many years' standing and at the same time to preserve for the Brotherhood the benefit of his future advice and assistance to the extent he felt able to give it. As the statement of policy in LMRDA indicates, the purpose of the Statute was to weed out instances of corruption, venality and breach of trust, and to preserve the rights of the union members; and to observe high standards of responsibility and ethical conduct by union officers in union affairs. A careful reading of the papers which have been submitted on these motions is not persuasive that the policy of the LMRDA has been violated in this instance. Moreover, even if it is assumed that Title V applies to breaches of fiduciary responsibility other than those involving money and property held by union officials for the benefit of *284 the union, cf. Penuelas v. Moreno, 198 F.Supp. 441 (S.D.Calif.1961), with Nelson v. Johnson, 212 F.Supp. 233, 284 (D.Minn.1963), it is difficult to find a breach of fiduciary responsibility here that is actionable under Section 501(b). For to hold that defendant's acts constituted a breach of fiduciary duty under Section 501(b) would be to make virtually every election irregularity by a union official actionable under Title V, a result which would defeat the purpose of Title IV.
It is not clear from the complaint whether plaintiffs seek to recover under Section 501(b) of Title V the salary that has been paid to defendant Harrison to date as Chief Executive Officer. Cf. Holdeman v. Sheldon, 204 F.Supp. 890 (S.D.N.Y.), aff'd per curiam, 311 F.2d 2 (2d Cir. 1962). If plaintiffs are asserting such a claim, the Court would hold the claim to be premature until the underlying issues are resolved by proceedings under Title IV. Cf. United States v. Western Pac. Ry. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).
There are additional reasons why the complaint must be dismissed. Venue in this district of a claim under Title I is improper since any action under Title I must be instituted either in the district where the alleged violation occurred (Resolution No. 611 was passed and defendant Harrison was elected Chief Executive Officer in Los Angeles, California), or where the principal office of the Brotherhood is located (which plaintiffs allege to be Cincinnati, Ohio).[8] Plaintiffs seek to overcome this obstacle by asserting that their claims under Title I are pendent to their claims under Title V. As appears below, this argument must be rejected.
Turning to Title V, Section 501(b) sets forth the prerequisites for a suit for violations of that Title.[9] The complaint does not disclose compliance with the requirement of Section 501(b) that before a union member can bring an action under that section he must request the union to do so, and the union must refuse or fail to bring suit within a reasonable time after the request. However, two of the plaintiffs, Coleman and Klucz, filed an ex parte application in this Court for leave to sue under Section 501(b), and such leave was granted by an ex parte order dated November 15, 1963. A review of the papers in connection with this ex parte application makes it clear that the above requirement of Section 501(b) was not called to the attention of the Court. Indeed, all that was presented to the Court was a statement by plaintiffs' attorney, "I am well persuaded that the complaint sets forth a valid cause of action; that it was not brought on for purposes of delay, and that there are no valid or substantial defenses to the good and meritorious claims stated in the complaint." Accordingly, the Court examines this matter de novo and concludes that plaintiffs have not met the requirements of Section 501(b) prior to instituting this action. The complaint does not allege, nor does it appear from the facts, that it would be futile to request the Brotherhood to take action to secure the relief sought in the complaint. The failure of the plaintiffs to make this request requires the dismissal of the claims, if any, asserted under Section 501(b), Penuelas v. Moreno, supra, and leads to the dismissal of the complaint in its entirety since upon the dismissal of the Title V claims, any claims under Title I would fail for improper venue.
Defendants' motion to dismiss the complaint is granted. Plaintiffs' motions are denied.
Settle order on notice.
NOTES
[1] "(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."
[2] "(f) When officers are chosen by a convention of delegates elected by secret ballot, the convention shall be conducted in accordance with the constitution and bylaws of the labor organization insofar as they are not inconsistent with the provisions of this title. The officials designated in the constitution and bylaws or the secretary, if no other is designated, shall preserve for one year the credentials of the delegates and all minutes and other records of the convention pertaining to the election of officers."
[3] "(a) (1) Equal rights.  Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."
[4] "(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

"Member" is defined as follows in Section 3(o) of the LMRDA, 29 U.S.C. § 402(o):
"Sec. 3. For the purposes of titles I, II, III, IV, V (except section 505), and VI of this Act 
"(o) `Member' or `member in good standing', when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."
[5] Section 402 of Title IV (29 U.S.C. § 482) provides as follows:

"(a) A member of a labor organization 
(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.
"(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.
"(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds 
(1) that an election has not been held within the time prescribed by section 401, or
(2) that the violation of section 401, may have affected the outcome of an election,
the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 401, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.
"(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal."
[6] The complaint does not seek plaintiffs' reinstatement to membership in the Brotherhood or any of the other relief which plaintiffs seek to obtain by their motion for a preliminary injunction.
[7] The Resolution recited that defendant Harrison had expressed a desire to retire, that he had rendered long and distinguished service to the Brotherhood, that his knowledge and experience was of great value to the Brotherhood, and that "it is the desire and intent to assure to the Brotherhood the continuing services of George M. Harrison". The last paragraph of the Resolution was:

"Salary to be paid to George M. Harrison as `Chief Executive' shall be the same as he now receives as Grand President."
[8] Section 102 of Title I, 29 U.S.C. § 412.
[9] Section 501(b) is set forth in a footnote at page 281, supra.