324 F.2d 486
 Raymond H. HARVEY, Herman Shapiro and John Galletta, each of
them individually and on behalf of all other
persons similarly situated, Plaintiffs-Appellants,
v.
Jesse M. CALHOON, as President, or Herbert W. Peters, as
Secretary-Treasurerof District No. 1 National
Marine Engineers' Beneficial
Association, AFL-CIO, Defendant-Apellee.
 No. 168, Docket 28445.
 United States Court of Appeals Second Circuit.
 Argued Oct. 23, 1963.
Decided Nov. 7, 1963.
 
 Burton H. Hall, New York City, for appellants.
 David Scribner (Pressman & Scribner, New York City), for defendant-appellee.
 Before LUMBARD, Chief Judge, and MEDINA and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 On August 12, 1963, plaintiffs, members of District No. 1, National Marine Engineers' Beneficial Association, a labor organization consisting of some 6000 marine engineers, instituted this action in the District Court for the Southern District of New York against the District Association, its President and its Secretary-Treasurer. The complaint asserted that the action was brought on behalf of plaintiffs and all other similarly situated members of the union to prevent the infringement of rights guaranteed by 101(a)(1) of the Labor- Management Reporting and Disclosure Act of 1959 (hereafter LMRDA), 29 U.S.C. 411(a)(1); the jurisdiction of the district court was laid under 102. Believing that in fact the complaint alleged only a violation of 401 of LMRDA, 29 U.S.C. 481, and that the Act did not confer jurisdiction on a federal court to entertain a suit by union members to prevent a violation of that section, Judge Feinberg dismissed the complaint for want of federal jurisdiction. We think the complaint alleged a violation of 101(a)(1) and that federal jurisdiction existed under 102.
 
 
 2
 The complaint set forth that by-laws, imposed upon District No. 1 by a District Executive Committee composed of officials of its various locals, provide that the only candidate whom a member may nominate for any office is himself; that the practice of the District prohibits a member from nominating himself for more than one District office; that the national constitution of the union further restricts members' right to nominate by providing that no member other than an incumbent official is eligible for nomination or election to a full-time elective office unless he has been a member for five years and has served 180 days or more of sea time on vessels covered by collective bargaining agreements wit the national organization or its subsidiary bodies in each of two of the three years preceding nomination; and that the national constitution further provides that a candidate for the office of District President must have previously been elected and served as a full-time and paid official of an organization affiliated with the national body. The complaint prayed that an impending election under these provisions should be enjoined, as well as for other relief. An affidavit of plaintiff Harvey, submitted in support of a motion for a temporary injunction, enlarged upon the complaint by alleging that defendant was holding its first general election during the 90-day period beginning September 1, 1963; and that each plaintiff had been denied any right to nominate because he could nominate only himself but was ineligible for failure to meet the 180-day sea time requirement. Defendant's cross-motion to dismiss the complaint did not challenge plaintiffs' allegations but contended that these did not make out a case under 101(a)(1) of LMDRA and that in any event the court was without jurisdiction.
 
 
 3
 Title I of LMRDA, 'Bill of Rights of Members of Labor Organization,' was added during the Senate's consideration of the Kennedy-Ervin bill, S. 1555, 86th Cong., 1st Sess. (1959), as reported by the Committee on Labor and Public Welfare. The initial proposal by Senator McClellan, adopted on April 22, 1959, see NLRB Legislative History of Labor-Management Reporting and Disclosure Act of 1959, 1102, 1119 (1959), was substantially amended in a form proposed by Senator Kuchel and passed by the Senate on April 25, id. at 1220, 1239ff. The bill later passed by the House of Representatives and the statute as enacted contained provisions similar to Senator Kuchel's amendment. For our purposes the vital ones are the portion of 101(a)(1) which declares that 'Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization * * *' and 102, which reads as follows:
 
 
 4
 'Sec. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violations occurred, or where the principal office of such labor organization is located.'
 
 
 5
 The Kennedy-Ervin bill had included a Title III-- Elections which became Title IV of LMRDA. Section 401 contains a considerable number of substantive provisions. Among these are requirements concerning the frequency and manner of election of officers, distribution by the union of campaign literature at a candidate's request and nondiscrimination in the use of membership lists,[1] availability of such lists for inspection by a candidate, 'adequate safeguards to insure a fair election * * * including the right of any candidate to have an observer at the polls and at the counting of the ballots,' the notice of an election to be given to members etc. Most important here are the first and third sentences of 401(e):
 
 
 6
 '(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. * * * Each member in good standing shall be entitled to one vote.'
 
 
 7
 Section 401 is followed by 402, entitled 'Enforcement.' This says, in relevant part, that a member of a labor organization who has exhausted union remedies or has failed to obtain a final decision within three months after invoking them 'may file a complaint with the Secretary (of Labor) within one calendar month thereafter alleging the violation of any provision of section 401'; and that
 
 
 8
 '(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title and such rules and regulations as the Secretary may prescribe.'
 
 
 9
 Section 403, headed 'Application of Other Laws,' provides
 
 
 10
 'Sec. 403. No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this title. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive.'
 
 
 11
 It is plain enough that 401 covers a much wider territory with respect to union elections than the guarantees of equal rights and privileges to nominate and to vote contained in 101(a)(1). Whereas 101(a)(1) is directed solely to basic rights of members, 401 deals both with rights of members, which it grants with far greater elaboration and specificity than the earlier section, and with rights of candidates.
 
 
 12
 It is not contended that the instant action, brought before the distribution of ballots had begun and for the purpose of enjoining an election under the allegedly illegal provisions of the District's bylaws and the national's constitution, encounters the bar of the last sentence of 403, making a suit by the Secretary of Labor the exclusive remedy 'for challenging an election already conducted * * *.'[2] Neither, in the view we take of the case, need we consider the much mooted question whether the substantive provisions of 401 (other than the provision noted in fn. 1) create claims enforceable by private pre-election suits in state or federal courts.[3] For we hold that the complaint alleged a violation of 101(a)(1), and that the district court had jurisdiction under 102 to remedy it.
 
 
 13
 If the union's constitution and bylaws had provided that only paid officials could make nominations for District President and that only incumbent officers or members with 180-day sea time in each of two of the three preceding years could make nominations for any other office, it could hardly be asserted that the members had 'equal rights and privileges * * * to nominate candidates.' Indeed, such a classification of union members would have been deemed invalid at common law, long before the LMRDA. See Cameron v. International Alliance of The-atrical Stage Employees, 118 N.J.Eq. 11, 176 A. 692, 97 A.L.R. 594 (Ct.Err. & App. 1935). Yet the combined effect of the eligibility requirements and the restriction to self-nomination is precisely that. With respect to the rules here in question, the statement of another district judge, relied on by the opinion below, that self-nomination 'makes it as easy to be nominated as possible,' is thus too facile, Jackson v. National Marine Engineers Beneficial Ass'n, D.C., 221 F.Supp. 347. We have no occasion now to consider whether such severe eligibility requirements as have here been imposed, especially as to the District Presidency, or the self-nomination restriction, if either stood alone, would still infringe the guarantee of 101(a)(1) to 'equal rights and privileges * * * to nominate candidates' or would only raise a question of denial of 'a reasonable opportunity * * * for the nomination of candidates' etc. under 401(e). The fact that plaintiffs sought unsuccessfully to nominate themselves and in that sense are complaining also as candidates does not blot out the main thrust of their complaint-- that the union has deprived members of the equal rights and privileges to nominate guaranteed by 101(a)(1).
 
 
 14
 Whatever the right answer may be with respect to the permissibility of pre-election suits to enforce rights granted only by 401, we see no reason to think that the assurance of 'a reasonable opportunity * * * for the nomination of candidates' given by 401(e), and its consequent overlap with 101(a)(1), should be considered to have withdrawn jurisdiction granted by 102 in a case not affected by the exclusive 'post-election' provision of 403. The Senate superimposed Title I on the Kennedy-Ervin bill because it was not satisfied that the latter, including the provisions now contained in Title IV, went far enough in protecting basic rights of union members. It agreed with Senator McClellan's position that the bill should define fundamental rights of union members 'just as the rights of the American people are set forth in the Bill of Rights of the Constitution of the United States,' Legislative History, 1104, and overrode Senator Kennedy's initial objection that union members were better protected 'by present State law, by the provisions of the bill, and by the Taft-Hartley Act.' Legislative History, 1108.[4] Moreover, whereas the McClellan amendment had provided for civil enforcement of the Bill of Rights through suit by the Secretary of Labor (see 103 of the amendment, Legislative History, 1102), the Kuchel amendment substituted the private suit now embodied in 102, this being described as 'one of the major changes in the proposal.' Legislative History, 1232.
 
 
 15
 The District Court thus erred in dismissing the complaint for want of jurisdiction.[5] The plaintiffs' right to a temporary injunction against the holding of the election under the present constitution and bylaws is plain and such an injunction should issue promptly. The district court should also require the union to submit new provisions as to the right to nominate that will meet the mandate of 101(a)(1). See Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552-553, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).
 
 
 16
 The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. The mandate will issue forthwith.
 
 
 
 [1]
 This requirement is made 'enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office.' 401(c)
 
 
 [2]
 Counsel stipulated that the mailing of the ballots would not adversely affect or enlarge the rights and obligations of the parties. In any event, an election has not been 'conducted' in our view at least until the time for balloting has expired. We are not called upon to consider whether if an appropriate action has been begun before an election is 'conducted' but the election has not been enjoined, 403 would require the court to stop in its tracks once the election was 'conducted.'
 
 
 [3]
 The affirmative, as to most of the provisions, is argued in Summers, Preemption and the Labor Reform Act-- Dual Rights and Remedies, 22 Ohio State L.J. 119, 135-140 (1961). A contrary view, at least as to federal jurisdiction, is taken in such cases as Johnson v. San Diego Waiters Union, 190 F.Supp. 444 (S.D.Calif.1961), Colpo v. Highway Truck Drivers, 201 F.Supp. 307 (D.Del.1961), vacated as moot, 305 F.2d 362 (3 Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962), and Jackson v. International Longshoremen's Ass'n, 212 F.Supp. 79 (E.D.La.1962). We have noted Mamula v. United Steelworkers of America, 304 F.2d 108 (3 Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962) and Beckman v. Local No. 46 Int'l Ass'n of Bridge, etc., Workers, 314 F.2d 848 (7 Cir. 1963), but find it unnecessary to express any opinion as to the conclusions reached on the facts there at issue
 
 
 [4]
 Senator Kennedy in no way opposed the substance of the Bill of Rights proposed by Senator McClellan but feared that it might eliminate protection afforded by state law without creating a satisfactory alternative. Although he voted against the McClellan amendment, Legislative History, 1119, his objections apparently were met by the anti-preemption language in 103 of Senator Kuchel's substitute, Legislative History, 1221, and he voted for Title I in that form, Legislative History, 1239
 
 
 [5]
 We have not overlooked an argument that the first sentence of 403 protects a union against being required to conduct an election 'in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this tiel,' and that plaintiffs must thus rely on 401(e) rather than on 101(a)(1) in order to win, since 101(a)(1) is not in 'this title.' We do not think the statute should be read so literally, particularly in view of the legislative history summarized above, and therefore need not consider an alternative argument that in a suit based on 101(a)(1) a plaintiff can avail himself of 401(e) as a replication to a defense based on 403 even if 402 is the exclusive remedy for affirmatively enforcing Title IV rights (other than those noted in fn. 1). Compare Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)