337 F.2d 216
 Peter LIBUTTI, Charles P. McDermott and Anthony J. Gatto,
Each of them individually and on behalf of all other members
of Local 920, International Longshoremen's Association,
similarly situated, Plaintiffs-Appellees,
v.
Alex DI BRIZZI, as President, or Joseph Vincenzino, as
Business Agent, or Arnold Guerriero, as
Secretary-Treasurer of Local 920,
International Longshoremen's
Association,
Defendant-Appellant.
 No. 188, Docket 29206.
 United States Court of Appeals Second Circuit.
 Argued Sept. 25, 1964.
Decided Oct. 13, 1964.
 
 Burton H. Hall, New York City, for plaintiffs-appellees.
 Julius Miller, New York City (Gleason & Miller, New York City, on the brief), for defendant-appellant.
 Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 Alex Di Brizzi and two other officers of Local 920 of the International Longshoremen's Association appeal from a preliminary injunction which ordered the defendant local to afford each of its members, within twenty days, a fair opportunity to nominate candidates for office, and, within thirty days thereafter, to conduct an election in accordance with its constitution and bylaws. The appeal raises two questions: first, whether arbitrary restrictions on eligibility for office, admittedly imposed in violation of the union's constitution and bylaws, infringe the equal right to nominate guaranteed by 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. 411(a)(1) (Supp. IV, 1963), and, second, whether a member is required to exhaust available union appellate procedure before seeking redress in the courts for such an admitted violation.
 
 
 2
 The facts are not in dispute. A regular meeting of Local 920 was held on July 16, 1964 for the purpose of nominating candidates for an August election. Before any nominations were made, the executive board recommended to the meeting that only members who had worked at least 700 hours as a longshoreman in each of the preceding five years should be eligible for office. Since eligibility requirements were already enumerated in article II of the local's bylaws, this recommendation amounted to a bylaw amendment, for which article XI of the bylaws required notice at three consecutive meetings and by mail prior to a vote. Nevertheless, the recommendation was adopted immediately by a vote of a majority of the members present at the meeting.[1]
 
 
 3
 Plaintiffs Peter Libutti and Charles McDermott nominated and seconded Anthony Gatto for president; Gatto and another seconded and nominated Libutti for membership on the executive board. Both Libutti and Gatto were eligible under the requirements set out in the bylaws, but neither had worked 700 hours in each of the previous five years; in Gatto's case an injury had limited him to lighter work, which was not sufficient to provide regular employment.
 
 
 4
 The local's bylaws specify that a five-member board of elections shall be elected by the membership. At the July 16 meeting, however, the incumbent president, defendant Alex Di Brizzi, himself appointed a five-member committee to pass on nominations. On July 22 this committee ruled that plaintiffs Gatto and Libutti were ineligible for office under the 700 hour requirement. The result of this ruling was to leave Di Brizzi without opposition for reelection as president and to leave only seven candidates for the six positions on the executive board.
 
 
 5
 Plaintiffs brought suit on July 29 for injunctive relief in the United States District Court for the Eastern District of New York, alleging that defendants were denying them the equal right to nominate candidates guaranteed by 101(a) (1). Jurisdiction was grounded on 102 of the Act, which gives federal district courts jurisdiction to enforce the rights created by 101.
 
 
 6
 Five days later, plaintiffs moved for a preliminary injunction on the affidavits of Gatto and Libutti. The appellants did not dispute the facts, but moved to dismiss on the grounds that the district court lacked jurisdiction and that the plaintiffs had failed to exhaust their intra-union remedies. A hearing was held before Judge Bruchhausen on August 5, and on August 10 he signed an order which directed defendants to afford each of the local's members 'a fair opportunity in accordance with the constitution and bylaws of the defendant to nominate candidates of their choice' and restrained them from conducting an election until this was done. Upon application of plaintiffs, he issued a second order, dated September 4 and filed September 9, which in effect required defendants to comply with the first order within twenty days and also ordered that an election in accordance with the local's constitution and bylaws be held within thirty days following nominations.[2] Defendants appeal from the modified order.
 
 
 7
 Appellants' first argument is that 101(a)(1) is not applicable to the facts of this case and, therefore, there is no jurisdiction under 102. The premise of this argument is that, in guaranteeing union members 'equal rights and privileges * * * to nominate candidates,' 101(a)(1) protects only the right to nominate and not the right to be a candidate; since the 700 hour requirement did not bar anyone from making nominations, it did not violate 101(a)(1). We think that appellants read the provision too narrowly and that the 700 hour requirement did infringe plaintiffs' 101 rights.
 
 
 8
 Of course the guarantees of 101(a)(1) do not provide federal courts with a mandate for general supervision of union elections. A plaintiff complaining that ballots will not be counted properly or that the efficacy of his vote is otherwise threatened by practices subsequent to the nomination and voting must look to the broader provisions of 401(e) for a federally created remedy.[3] But 101(a)(1) does guarantee an equal right to nominate and to vote, and the existence of a more pervasive provision in 401 provides no reason for failing to make this guarantee effective. Cf. Harvey v. Calhoon, 324 F.2d 486 (2 Cir. 1963), cert. granted, 375 U.S. 991, 84 S.Ct. 633, 11 L.Ed.2d 478 (1964).
 
 
 9
 The right to nominate can be infringed by restrictions on eligibility for office as well as by rules dealing directly with the right to nominate. Appellants argue that, although the 700 hour requirement violates the local's constitution and bylaws, it is an objective standard based on seniority. But if such a restriction may be imposed without notice at a time when the identity of candidates is almost certain to be known and the opportunity to organize behind new candidates has passed, it can nullify the right to nominate as effectively and completely as a rule disqualifying opposition candidates by name. If such a practice occurs prior to the election, and it clearly threatens the equal right of members to nominate and vote, the court can and should act under 102. The wrongdoers otherwise will accomplish their purpose for an appreciable period of time.
 
 
 10
 Robins v. Rarback, 325 F.2d 929 (2 Cir. 1963) does not suggest a contrary rule. We there held that no 101 claim was stated by allegations that a forthcoming union election would not be properly conducted. Plaintiff alleged that persons other than the voter would handle the ballots prior to counting, that members would not be allowed to vote in secret, and that voters' credentials would not be properly challenged. To have granted effective relief, the court would have had to supervise the detail of the union election. In the instant case, however, plaintiffs complain of practices which are not merely threatened but in fact have occurred prior to the election.
 
 
 11
 Appellants also argue that relief should have been denied on the ground that plaintiffs failed to exhaust their union remedies. The ILA constitution provides for appeal from a local officer to the local executive board, from the executive board to a membership meeting of the local, and from the membership meeting to the district council. Plaintiffs admittedly have not attempted even the first of these appeals.
 
 
 12
 Section 101(a)(4) expressly incorporates the common law principle that a dispute between a union or other private association and one of its members should in general first be submitted to the association's own tribunals. But neither at common law nor under 101 is this principle absolute, Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), and included among the traditional exceptions is the situation in which the action complained of is 'void.' Shapiro v. Gehlman, 244 App.Div. 238, 278 N.Y.S. 785 (1935); Summers, Legal Limitations on Union Discipline, 64 Harv.L.Rev. 1049, 1089 (1951).
 
 
 13
 Voidness is an elastic concept. Because it is tied up with the merits of the claim, its indiscriminate application could reduce the exhaustion requirement to the tautology that a plaintiff can find present relief in the courts only if his claim has legal merit. See Summers, op. cit. supra, at 1091. That this is a danger, however, does not mean that it is an inevitable result of applying the exception. When conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent: the commitment of judicial resources is not great; the risk of misconstruing procedures unfamiliar to the court is slight; a sufficient remedy given by the union tribunal would have to approximate that offered by the court. Where, as in this case, conceded facts show a serious violation of a fundamental right, we hold that plaintiffs need not exhaust their union remedies.
 
 
 14
 Appellants' further contention-- that the district court should not have ordered an election without first granting defendants a hearing on the merits-- is not supported by any suggestion as to what the hearing might have accomplished. Defendants have not disputed plaintiffs' relevant factual allegations, and in the argument of this appeal they admitted them. Accordingly, no further hearing was required.
 
 
 15
 We affirm the order of the district court and direct the immediate issuance of our mandate. The stay which we granted pending determination of the appeal is vacated; the district court should proceed to set new dates for the nominations and for the election.
 
 
 
 [1]
 Gatto also alleged in his affidavit that he went to the podium at the close of the meeting to request a copy of the minutes. As he was leaving the podium, he was assaulted by Frank DiMeo, a political ally of the incumbent officers. As a result of the attack, Gatto's arm has been in a cast, and he has been unable to work. These allegations have not been denied by defendants
 
 
 [2]
 In support of plaintiff's request for the second order, their attorney, Burton Hall, submitted an affidavit pointing out that the first order provided no time limit and alleging that defendants intended simply not to hold nominations or election. Di Brizzi alleged in reply that they intended to hold an election within a reasonable time after receiving a requested interpretation of the local's bylaws from the international union
 
 
 [3]
 Appellants argue that a limitation on eligibility for office can be challenged only under 401(e), 73 Stat. 532, 29 U.S.C. 481(e) (Supp. IV, 1963). Sections 401-403 are concerned generally with union elections, and 401(e) in particular deals with qualifications for office as well as for nominating and voting and with post-election as well as pre-election procedures. One provision states that, subject 'to reasonable qualifications uniformly imposed,' 'every member in good standing shall be eligible to be a candidate and to hold office.' The 700 hour requirement clearly is unlawful under this section. We do not think that it is a necessary corollary, however, that the requirement is not also unlawful under 101(a)(1). We are particularly hesitant to draw such an inference since it is not certain that a private suit may be brought under 401. See Harvey v. Calhoon, 324 F.2d 486, 489 (2 Cir. 1963)