Edwin L. ARCHIBALD, Alias Les Archibald, Alias John Doe

v.

LOCAL 57, INTERNATIONAL UNION OF OPERATING ENGINEERS (AFL–CIO), Providence, Rhode Island.

Civ. A. No. 3161.

United States District Court
D. Rhode Island.

Nov. 17, 1967.

S. Everett Wilkins, Jr., Providence, R. I., for plaintiff.

Julius C. Michaelson, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

The complaint alleges that the defendant by and through its officers, agents and members violated the plaintiff's legal rights by imposing a fine of $500.00 and suspending him from membership in its union.

For twenty years, the plaintiff had been an operating engineer who became a member of the defendant union in 1956 or 1957. In 1962, he became dissatisfied with its management because of a softball team made up of non-union members which was maintained by the union through a so-called "booster fund." The basis of the plaintiff's dissatisfaction was the practice whereby members of the union "had" to pay into this fund each week in cash the sum of five ($5.00) dollars. There is also evidence that about this same time, the plaintiff aspired to be business manager of the local and set out to defeat the incumbent "Jack" White.

In 1962, he began to publish a so-called "progress report" which he mailed to the various members of Local 57 each month. Two of these issues formed the basis of charges against him by the union. He was accused of having violated a section of the Union's constitution which provides, among other things, "any officer or member of a Local Union who * * * wrongs a fellow member * * * who commits an offense discreditable to the International Union or its subdivisions; * * * who destroys the interest and harmony of the local union * * * who wilfully slanders or libels an officer or member of the organization * * * may be disciplined, or, upon trial therefor and conviction thereof, be fined, suspended, or expelled from his Local Union."

Specifically he was charged with having, in December 1962 and February 1963, compiled, published, distributed and circulated false and libelous matter as recited in the "progress reports" of these two dates and affixed to the charge.

These reports attacked "Jack" White and other officials of the union and advocated abolition of "Jack" White's non-union softball team, his "booster fund racket" and claimed that "Jack" White and five other officials were being investigated by the NLRB, and "two government" men for fraudulent reporting and multiple job holding. The statements also charged that, " * * * non-union softball players (were) working while rank and file men remain unemployed. Full investigation continues. Collusion with general contractors hinted." In another section of the statement forming the basis of the charge, the plaintiff said, " * * * as we know that when the International finally understands the graft and corruption surrounding Jack White, and will stand by us in holding

the first honest election in the history of the Local, the shoe will be on the other foot." In another section he claimed a transfer was turned down " * * * by the puppet executive board with Jack pulling the strings."

The plaintiff was also charged with having sent a telegram in which there was the following false and libelous defamatory accusation " * * * all my available time is being spent to expose Jack White's corruption in mishandling rank and file unionmen's money to support unwanted non-union softball team."

On April 2, 1963, the trial took place in the absence of the plaintiff who testified he was beaten and denied entrance to the hall where the hearing was being held. On April 5, 1963, he was notified that the local union had found him guilty and prescribed the penalty of suspension and a fine of $500.00. The plaintiff attempted to appeal to the International Union but was notified on April 16, 1963 that under the provision of the International Constitution no appeal could be taken from the imposition of a fine unless and until such fine had first been paid. The plaintiff testified he did not pay such fine because he was unable to do so and that he did not seek a waiver of such payment as is provided by the union's constitution because he misinterpreted the pertinent provision and so did not know he could have requested such relief and still press his appeal.

The law in this case is the Labor Management and Disclosure Act 1959—29 U.S.C. §§ 401–531. A subchapter, "Bill of Rights of Members of Labor Organizations" (101(a) (1) and (2), 29 U.S.C. Sec. 411(a) (1) and (2)) provides:

(1) EQUAL RIGHTS—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) FREEDOM OF SPEECH AND ASSEMBLY—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express *any views, arguments, or opinions;* and to express at meetings of the labor organization *his views, upon candidates in an election* of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings; *Provided, that nothing herein shall be construed to impair* the *right* of a *labor organization* to adopt and *enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."* (emphasis added)

Section 102, 29 U.S.C. § 412 safeguards the rights just enumerated by providing:

"Any person whose rights secured *by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.* Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." (emphasis added)

Section 609, 29 U.S.C. § 529 makes doubly secure the protection of the members in the exercise of their rights by providing:

*It shall be unlawful for any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is*

*entitled under the provisions of this Act.* The provisions of section 102 shall be applicable in the enforcement of this section." (emphasis added)

■ Our courts have clearly stated that the Labor-Management Reporting and Disclosure Act was designed to protect the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers. The purpose of these sections is to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain. Salzhandler v. Caputo, 2 Cir., 316 F.2d 445.

■ In this same case, the court stated that under the provisions of this law it is beside the point whether the statements uttered are true or false. In other words, a union member may freely express his opinions even if his statements are false and libelous. By virtue of the above provisions, the union may not take any disciplinary action against him. Reprisal within the union for the expression of views is absolutely prohibited. If a libelous statement is made, the individuals libeled may sue the person who made the statement personally but the union cannot subject the member to any disciplinary action on a finding by its governing board that such statements are libelous.

There are two exceptions, however. As the libel of the union may impair its cohesiveness and create serious dissension, such conduct might be subject to union discipline. Some proof of these consequences would have to be shown.

1) A member cannot make libelous statements toward the organization as an institution, and

2) he must refrain from conduct that would interfere with the union in its performance of its legal or contractual obligations.

The defendant presents a two pronged argument contending first that the statements expressed by the plaintiff fall within the exceptions of the proviso of section 101(a) (2) and secondly that

whether or not they fall within the exception, the plaintiff is not relieved from the requirement that he exhaust all union appellate remedies before seeking judicial relief.

He argues that the state of the record indicates that Mr. Archibald was of the opinion that all of the union officers and even those not in office were corrupt; that the whole executive board were puppets and that collusion took place between contractors with whom the union had contracts and the union. He presses the contention that this brought the whole union in disrepute and so was an attack on it as an entity and not an attack on "Jack" White and the officers as individuals. There was, however, no showing how the union has been affected. The union, it can be presumed, has not lost a large number of its members nor has it suffered as a collective bargaining agency with its contractors.

This court is hard pressed, to say the least, to appreciate this argument. The "progress reports" of Mr. Archibald attack "Jack White's non-union softball team * * * his 'booster' fund racket * * * fraudulent reporting by Jack White * * * multiplicity of job holding by (5) five union officials."

All the statements made by the complainant have one unmistakable overtone and that is the conduct of "Jack" White and certain other union officials. In the closing statements of these reports, we again find the very pointed attack on "Jack" White by reciting " * * * the graft and corruption surrounding Jack White * * * " and concludes by asking the membership to, "refuse to pay Jack White's 'booster' fund."

In none of the progress reports is there anything other than a relentless hammering on the conduct of "Jack" White and certain other union officials.

■ None of these statements even remotely come within either of the two exceptions of section 101(a) (2). Archibald in his campaign was working for what he believed to be the honest management of union affairs.

It is this court's opinion that the charges placed against him were for the sole purpose of stifling his freedom of expression. The statute in question was designed not to countenance such reprisals by the union.

■ The very purpose of the section of the act in question is to protect the rights of union members to unbridled discussion and criticism of the management of their union affairs without the fear of being silenced by disciplinary powers of union officials. True, each case must stand or fall on its own facts, but it is this court's opinion that only if overwhelming evidence were presented that comments adversely affected the union, would such comments and criticisms of union officials come within the ambit of the exceptions of section 101(a) (2).

We are dealing here with the fundamental right of free speech by union members upon those who dominate if not control the organization. The "Bill of Rights" seeks and protects the democratic process of unfettered expressions of opinions within the union. The norms as we understand them under the First Amendment to the Constitution have no application and so it is of no consequence whether the statements are true or false or even malicious. Salzhandler v. Caputo, supra; Cole v. Hall, 49 L.C. 19035; Libutti v. Di Brizzi, 2 Cir., 337 F.2d 216.

■ The action of the defendant union in charging the plaintiff was void. The action it took was beyond its powers and so it had no jurisdiction to punish Mr. Archibald.

The defendant cites in support of its second argument that administrative remedies not having been exhausted, the plaintiff has no standing before this court whether or not the charge placed against him by the local union was valid. Detroy v. American Guild of Variety Artists, 2 Cir., 286 F.2d 75; Edsberg v. Local Union No. 12 of International Union of Operating Engineers, 9 Cir., 300 F.2d 785; Harris v. International Longshoremen's Association, Local 1291, 3 Cir., 321 F.2d 801; Salzhandler v. Caputo, 2 Cir., 316 F.2d 445.

In relying on the Detroy case, the defense contends that it sets forth only the following specific situations which eliminate the need to exhaust internal remedies:

1) Where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party.

2) The violation of the Federal Law is clear and undisputed.

3) The injury to the union member immediate and difficult to compensate by means of a subsequent money award.

He further points out that the court stated at page 77 of 286 F.2d:

"However, the broad language of the proviso in § 101(a) (4) includes suits instituted against labor unions in any court on any claim."

And that this means it extends to cases under the so-called "Bill of Rights;" that is those which fall within section 101(a) (2) designed to protect the rights of union members to free discussion and criticism.

In further support of his position, defense argues that the Salzhandler case, supra, involved free speech and the court was careful to note that administrative remedies had been exhausted; that this same court in the Edsberg case, supra, also involving the free speech provisions, reiterated this portion in saying:

"The procedures for appeal so set up do not seem upon first blush too complicated or likely to result in long delays in processing an appeal. And we think it clearly appears from the record no real attempt to exhaust administrative remedies has here been made."

The Harris case, supra, he contends, is further support and quotes from page 805 of 321 F.2d:

"As long as there is likelihood that some decision will be forthcoming within the four-month period, and the

aggrieved member has not shown that he will be harmed by being required to seek such a decision * * * the purposes of the act require that judicial intervention be withheld until the member has given the internal grievances procedures the chance to operate which Congress deemed to be reasonable."

In none of these cases do we find a determination by the court that the factual situation complained of was void, nor can this court agree that the interpretations of the defense attributed to these decisions are entirely correct.

Of course, the Salzhandler case involved the question of free speech but not in the sense that it held that even though the complaint was or may have been void it nevertheless required exhaustion of internal remedies before judicial relief could be had. It is this court's opinion it cannot be cited for the position the defense takes.

It clearly stands for the proposition that speech protected by the Labor-Management Reporting and Disclosure Act differs from constitutionally protected speech in that libelous statements by union officers cannot be made the subject of disciplinary action against a member by the union and that any union constitutional provision to that effect is unenforceable. It further holds that the exceptions in the proviso to 101(a) (2) while including only two did not mean others were intentionally excluded but "we believe that the legislative history supports the conclusion that Congress intended only those exceptions which were expressed."

To such extent, this case is directly applicable to the issue at bar and this court cannot read into it any holding concerning a procedural requirement of exhaustion of remedies as proposed by this defendant.

As to the Detroy case, supra, the defense rests heavily on the one statement of the court quoted above and more especially on that specific language reading:

" * * * in any court on any claim. Absent a clear directive by Congress, the policy formulated over a course of time by courts reluctant to interfere in the internal affairs of a private organization should not be superseded."

He argues this means that even in those cases where the proceedings are void, the member must exercise all available appeals within the union. This court cannot agree. This contention is utterly fallacious. The defense does not correctly interpret the language he quotes —suffice it to say that this case expressly enunciates that Congress had no intention of establishing an absolute duty to exhaust union remedies before applying to the Federal Courts.

The holding of the Detroy case is clear as evidenced by its language at page 78 of 286 F.2d:

"The statute provides that any member of a labor organization 'may be required' to exhaust the internal union remedies, not that he 'must' or 'is required to' exhaust them. * * * We therefore construe the statute to mean that a member of a labor union who attempts to institute proceedings before a court or an administrative agency may be required by that court or agency to exhaust internal remedies of less than four months' duration before invoking outside assistance."

The other contentions of the defendant are equally without merit and summarily dismissed by this court.

"If the disciplinary action is only voidable, the member must exercise all available appeals within the union; but if the proceedings are wholly void, there is nothing from which to appeal and he may seek immediate legal relief * * *" 64 Harv.L.Rev. 1089 (1951)

In the present case, the plaintiff did not complete his appeal.

"Section 101(a) (4) expressly incorporates the common law principle that a dispute between a union or other private association and one of its members should in general first be sub-

mitted to the association's own tribunals. But neither at common law nor under § 101 is this principle absolute. Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir.) cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), and included among the traditional exceptions is the situation in which the action complained of is 'void.' Shapiro v. Gehlman, 244 App.Div. 238, 278 N.Y.S. 785 (1935); Summers, Legal Limitations on Union Discipline, 64 Harv.L.Rev. 1049, 1089 (1951)." Libutti v. Di Brizzi, 2 Cir., 337 F.2d 216, 219.

At page 219 this court also stated:

"When conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent: the commitment of judicial resources is not great; the risk of misconstruing procedures unfamiliar to the court is slight; a sufficient remedy given by the union tribunal would have to approximate that offered by the court. *Where, as in this case, conceded facts show a serious violation of a fundamental right, we hold that plaintiffs need not exhaust their union remedies.*" (emphasis added)

In passing on motions for direction, the court has before it a question of law as to the sufficiency of the evidence which must be construed without the exercise of any discretion as to its weight, credibility or preponderance. The judgment of the court cannot be substituted for that of the jury. The matter must be determined as a question of law. It is based on the absence of any evidence to warrant submission of the case to the jury.

■ The evidence must be viewed in the light most favorable to the party against whom the directed verdict is sought—the party against whom the motion is directed is not entitled to the benefit of inferences which are unreasonable or are opposed to undisputed physical facts and where there is no conflict in the evidence or inferences deducible therefrom or where the evidence is all on one side, then a verdict should be directed.

Applying these standards to the case at bar, it is this court's opinion we have a totally one sided situation where there can be no differences by fair minded men and which must be determined as a question of law.

There is nothing in this case as a matter of fact or of law to warrant the defendant's request for a direction of the verdict.

The defendant has now rested his case except as to the issue of damages and the plaintiff has now presented to the court his motion for a directed verdict. For the reasons stated in this opinion, the defendant's motion for a directed verdict is hereby denied. The plaintiff's motion for a directed verdict is hereby granted.

This court hereby nullifies and declares void the actions of the defendant, Local 57, in fining and suspending the plaintiff and hereby orders him reinstated in the defendant union with full rights restored as though no action had ever been taken against him.

The defendant union, its officers and agents are hereby enjoined from any interference with the plaintiff's expression of his opinions and statements regarding the conduct of union officers, agents and or members in their management and handling of all union affairs.

The court does not specifically grant the plaintiff's prayer to declare of no force and effect Article 23, Subdivision 7, Section E of the Constitution of the International Union of Operating Engineers. It is this court's opinion that it need go no further than to have the same interpreted only to the extent of this decision.

■ This leaves only the question of damages and since both parties have moved for a directed verdict at the close of the evidence on which the court has ruled and agree that the case be taken from the jury, the court will determine

the issue of damages. Lost wages can be awarded a union member in an action based on alleged violation of membership rights by a union. International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018; Local 100 of United Ass'n of Journeymen & Apprentices v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 whereas claims for humiliation and loss of reputation cannot. International Brotherhood of Boilermakers, etc. v. Rafferty, 9 Cir., 348 F.2d 307. The court hereby considers the following evidence in determining the amount of damages to be awarded to the plaintiff:

a) The evidence developed in cross examination established quite conclusively that in 1964, 1965 and 1966, the plaintiff in this action, while working for General Dynamics, did not look for work with union contractors—did not know if he could have gotten a job with union contractors as he did not try. His testimony is he simply didn't look elsewhere for a job. The cross examination then culminated this line of questioning as follows:

"Q. Mr. Archibald, you were suspended in '63?

A. Right.

Q. Now, since this suspension you don't know whether you could of not gotten a job with a union contractor, right?

A. Right.

Q. In fact you know that you could have because in 1963 after this suspension you worked for two union contractors and had no difficulty getting a job, is that right?

A. Right."

On the basis of the testimony, there is no evidence at all to substantiate a claim for damages as there is nothing establishing that this plaintiff was unable to get a job because of his suspension. On the contrary, it quite conclusively shows that he did work at union scale during this period of time. In September of 1963, there was a two week lay-off as testified to by Mr. Archibald, but the evidence is entirely devoid of proof that during this period he was unable to obtain employment because of his suspension.

He stayed with General Dynamics to January 1967 and then went to Viet Nam where he received $1100.00 per month. This evidence, of course, does not establish any right to damages as to the case at bar. From February 1967 to date, there is no evidence that he even attempted to work at his job as an operating engineer, but worked instead as an expeditor.

This court awards the plaintiff nominal damages in the amount of one ($1.00) dollar.