Charles CHRISTOPHER et al.

v.

SAFEWAY STORES, INC., et al.

Civ. A. No. TY–77–74–CA.

United States District Court,
E. D. Texas,
Tyler Division.

Sept. 18, 1979.

Allen Butler, Dallas, Tex., for defendant Safeway Stores, Inc.

Edward B. Cloutman, III of Mullinax, Wells, Mauzy & Baab, Inc., Dallas, Tex., for defendant Amalgamated Meat Cutters Union Local 504.

Larry R. Daves of Daves, McCabe & Crews, Tyler, Tex., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

ROBERT M. PARKER, District Judge.

Plaintiffs CHARLES CHRISTOPHER and J. C. LUCE brought this action against SAFEWAY STORES and AMALGAMATED MEAT CUTTERS UNION LOCAL 504 seeking lost wages, compensatory damages, and injunctive relief. Plaintiffs contend that Defendant SAFEWAY breached the collective bargaining agreement that was in effect by closing the store Plaintiffs were working in and laying off the Plaintiffs on November 6, 1976. Plaintiffs contend that the Defendant UNION violated the duty of fair representation by refusing to take their grievance concerning the alleged wrongful discharge by SAFEWAY to arbitration. Further, the Plaintiffs allege that the Defendant UNION violated Sections 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act of 1959 by failing to submit alleged changes in the seniority provision of the 1976–78 collective bargaining agreement to the Union membership for approval.

 The Court finds that the seniority provisions contained in the 1976–78 collective bargaining agreement were not violated by Defendant SAFEWAY when Store # 508 was closed and Plaintiffs were laid off on November 6, 1976. Regardless of whether the 1976–78 collective bargaining agreement changed the method of calculating employees' seniority, the city-wide method of determining seniority was provided for in the 1976–78 collective bargaining agreement. On November 6, 1976, the Plaintiffs had the least amount of seniority within all Tyler Safeway stores, and Defendant SAFEWAY correctly applied the city-wide seniority provision contained in the 1976–78 collective bargaining agreement. Both of the Plaintiffs testified that the Defendant SAFEWAY acted in accordance with the 1976–78 seniority provision in laying off the Plaintiffs, and the evidence was undisputed on this point. Plaintiffs did not contest evidence that Store # 508 was an unprofitable operation. Discontinuance of a business operation for financial reasons is not an unfair labor practice, and it is within the prerogative of management to make a change for economic reasons without negotiating with the Union about the change. *NLRB v. Rapid Bindery, Inc.*, 293 F.2d 170, 174. Absent a charge of wrongful motivation by the employer, an operational change is an entrepreneurial decision that cannot be held violative of the collective bargaining agreement. A claim by the Plaintiffs that rights secured by the internal union constitution were infringed in violation of the Labor-Management Reporting and Disclosure Act will not support a cause of action against the employer. *Hayes v. Consolidated Service Corp.*, 517 F.2d 564, 566 (1st Cir., 1975). Because the

evidence is undisputed that SAFEWAY did not violate Plaintiffs' seniority rights upon the closing of Store # 508, this Court orders that judgment be entered for Defendant SAFEWAY.

■ A claim against the Union for breach of the duty of fair representation is not foreclosed by a finding that the employer did not violate the collective bargaining agreement. *NLRB v. Local 485, Electrical Workers*, 454 F.2d 17, 21 (2d Cir., 1972). As *Hayes, supra*, indicated, a claim that the union violated the Labor-Management Reporting and Disclosure Act is independent of any cause of action against the employer.

■ A union's duty of fair representation is implied from the National Labor Relations Act, 29 U.S.C. § 159(a). The duty of fair representations obligates a union to represent all workers of the collective-bargaining unit in good faith, both in the negotiation of a collective bargaining agreement and in processing grievances. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 342 (1966). In representing its members, a union must avoid arbitrary and discriminatory conduct. Plaintiffs have alleged that the Defendant Local 504 violated its duty of fair representation by failing to take to arbitration the Plaintiffs' grievance that Defendant Safeway wrongfully laid off the Plaintiffs. *Vaca v. Sipes, supra*, established that a union has the right to refuse to take to arbitration a grievance found to be without merit. Because the undisputed evidence showed that Defendant Safeway correctly interpreted and applied the seniority provision contained in the 1976–78 collective bargaining agreement, this Court must hold as a matter of law that the Defendant union did not violate its duty of fair representation by refusing to take a grievance without merit, as defined by the collective bargaining agreement then in effect, through the arbitration process.

■ The collective bargaining agreements involved in this case are written instruments, and the interpretation of the seniority provisions contained therein are questions of law to be determined by the Court. Differences as to the meaning of the two seniority provisions in question are not factual disputes calling for resolution by the jury; rather, this Court was required to instruct the jury on the meaning to be given to the seniority provisions.

The Court interprets the 1974–76 collective bargaining agreement to have provided for area seniority, meaning that employees could transfer among cities within the district without losing seniority. The 1974–76 collective bargaining agreement (Exhibit # 1) covered twenty-nine (29) cities in Texas, and Article 10 provided that seniority was to be calculated on a district-wide basis. Although both Safeway and Local 504 testified that there were actually twenty-nine (29) separate collective bargaining agreements, there is no language in the 1974–76 collective bargaining agreement to support this interpretation. Twenty-nine (29) cities were listed on the cover sheet of the collective bargaining agreement for 1974–76, and this was the one collective bargaining agreement covering all of the cities listed. The district was defined as the twenty-nine (29) cities listed, and the seniority provision called for seniority to be calculated on years of employment within the district. (P. 13, 1974–76 Collective Bargaining Agreement—Plaintiffs' Exhibit 1.)

Article 10 of the 1976–78 collective bargaining agreement is identical to the 1974–76 collective bargaining agreement except that Section 1(B) was added. Section 1(B) provided for seniority areas and listed 43 different cities, each city constituting a seniority area. By adding Section 1(B) to Article 10, Local 504 and Safeway changed the method of calculating seniority from an area-wide basis to a city-wide basis.

■ The evidence showed that Plaintiff CHRISTOPHER built up four (4) years of seniority, leading up to implementation of the 1976–78 collective bargaining agreement. During this period CHRISTOPHER was transferred among various East Texas cities several times, yet he did not lose his seniority acquired over the previous years until the 1976–78 collective bargaining

agreement became effective on November 30, 1975.

Plaintiffs were deprived ·of a valuable property right in the form of seniority rights when the union agreed to change the 1976–78 collective bargaining agreement so as to provide for city-wide seniority, without permitting the membership of the union to vote on such changes. The evidence was undisputed that Plaintiffs were deprived of the right to vote on the change in the seniority system, and that the change was made without notice to the union membership. The internal constitution of Local 504 provides that all major propositions in the collective bargaining agreement must be approved by the membership pursuant to an informative written notice. (Section 2, Local Constitution.) Defendant Local 504 contends that Article XV, Section 2, of the international constitution, giving the union business agent full power to execute a collective bargaining agreement, cuts off the right of members to vote on terms of the collective bargaining agreement. Interpreting both the local constitution and the international constitution together, it is clear that the business agent has full power to sign a collective bargaining agreement only after the membership has approved all major propositions contained therein. As a matter of law, seniority is a major proposition affecting all members, and it is perhaps the most important right secured to union members by the collective bargaining agreement. An important policy underlying all of the Labor-Management Reporting and Disclosure Act is that the union must keep members informed on matters they are to decide. This fiduciary duty, coupled with the right to vote on major propositions, guaranteed by the local constitution, means that the union was obligated to advise the membership of the proposed change in the seniority system, their right to vote on the change, and to allow the membership to debate the merits of the proposed change after being supplied written information on the pros and cons of the seniority system change. *Blanchard v. Johnson*, 388 F.Supp. 208, 214 (ND Ohio, 1974). By failing to disclose the proposed seniority change to the membership before the collective bargaining agreement was approved, the union violated the right of the members to vote and express their views on the change; these rights are guaranteed to union members under 29 U.S.C. § 411.

■ One of the main purposes of the Labor-Management Reporting and Disclosure Act was to charge unions with a fiduciary duty to represent the rights and interests of members in all dealings with employers. 29 U.S.C. § 401(b). In addition to guaranteeing an informed right to participate in union affairs, the Labor-Management Reporting and Disclosure Act affords union members the right to rely on procedures set up by the internal union constitution. Thus, in failing to submit the proposed changes to the membership for approval, Local 504 violated 29 U.S.C. 411(a)(1), and § 412 gave Plaintiffs a cause of action against the union for breach of their fiduciary duty to adequately represent all employees. The use of the term "referendum" in 29 U.S.C. § 411(a)(1) guarantees to the Plaintiffs a right to vote on the 1976–78 contract, and, by concealing the change in the seniority system, Local 504 did not afford Plaintiffs this right. *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961, 966 (6th Cir., 1976).

■ Testimony by both sides indicated that there was a conflict in interpretation of the seniority provision of the 1974–76 collective bargaining agreement. If all parties involved had interpreted the seniority provision in a particular way, the contract could be held to have been modified by the unanimous conduct of the parties. Vol. 3, A. Corbin, Contracts § 558 (1960, Supp.1971). However, due to the sharp difference as to whether the 1974–76 contract provided for town seniority, our interpretation that area seniority was provided for controls the meaning to be given the agreement, and there was no modification of the contract by later conduct of the parties.

The language of the collective bargaining agreement between Safeway and Local 504

as regards seniority rights of union members has been changed as of January 14, 1978, the effective date of the 1978–80 collective bargaining agreement, resulting in union members having seniority rights enforceable on an area-wide basis as opposed to being limited to the geographical area of a town only. As a result of the adoption by the union and the employer of the 1978–80 collective bargaining agreement, the relief sought by the Plaintiffs declaring town-wide seniority to be void is made moot.

The fact that injunctive relief is inappropriate under 29 U.S.C § 412 does not preclude an award of damages, if monetary relief is proper for the § 411 violation involved. *Simmons v. Avisco*, 350 F.2d 1012, 1019 (4th Cir., 1965). Where a union member has been denied informed voting rights provided for by the union constitution and guaranteed by 29 U.S.C. § 411, and the duty of fair representation, lost wages can be awarded in a 412 cause of action. *Archibald v. Local 57, Operating Engineers*, 276 F.Supp. 326 (DC R.I., 1967). The union is responsible for all damages suffered by the Plaintiffs because of the violation of their membership rights because the union's failure to allow an informed vote on the proposed seniority change cannot be charged to the employer.

Defendant Local 504 maintains the position that the failure of the Plaintiffs to bring forth evidence that town-wide seniority would have been rejected by the members as a provision in the 1976–78 collective bargaining agreement is a complete defense to the union's denial of membership rights. During the trial, Plaintiffs' attorney asked a Local 504 member if town-wide seniority would have been approved by the members when they voted on the 1976–78 contract; defense counsel objected to the question as calling for opinion testimony from a lay witness, and the Court sustained the objection. We do not believe that lack of evidence on the hypothetical question of how the members would have voted in 1975 if Local 504 had complied with their statutory duty forecloses recovery of lost wages by the Plaintiffs. See *Trail, supra*. The jury

could properly assess lost wages as being appropriate relief under § 412 for infringement of membership rights by Local 504 without considering speculation as to what would have happened had the union properly put the seniority change before the membership.

As a result of the area-wide seniority rights provision contained in the 1978–80 collective bargaining agreement between the employer Safeway and the Meat Cutters' Union, Plaintiffs' damages as a matter of law do not extend beyond January 14, 1978.

Plaintiffs contend that mental anguish and suffering caused by their lay-offs are proper elements of damages under 29 U.S.C. § 412, and that the union's infringement of their membership rights proximately caused the emotional distress suffered by the Plaintiffs. Damages for emotional distress have generally been held not to be recoverable in actions against a union for infringement of membership rights. *International Boilermakers v. Rafferty*, 348 F.2d 307, 315 (1965). The cases that have held mental anguish damages to be proper have involved intentional torts committed by the union in violation of 29 U.S.C. § 411. For example, recovery for emotional injury has been allowed where the union was found to have wrongfully ousted the plaintiff union member, *Simmons v. Avisco, supra*; where the union was found to have wrongfully removed the plaintiff from a union's officer position, *Sands v. Abelli*, 290 F.Supp. 677 (DC NY, 1968); and where the union was found to have invidiously discriminated against a non-union plaintiff, *Richardson v. Communications Workers*, 443 F.2d 974, 983 (1971). All of the cited cases involved malicious actions by the union, causing severe humiliation and embarrassment to the plaintiffs. This Court does not believe that infringement of membership rights by a failure to submit changes in the seniority system to the membership for approval is the type of intentional wrong that would allow recovery of mental anguish damages under § 412. For this reason, the jury was instructed not to consider emotion-

al injury suffered by the Plaintiffs in assessing damages that flowed from the union's denial of membership rights.

The awarding of attorney's fees to a successful plaintiff in an action brought under 29 U.S.C. § 412 is discretionary with the Court and comes within the equitable powers of the Court. The Supreme Court, in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972), established the common benefit analysis for determining whether attorney's fees should be awarded in a suit brought for enforcement of membership rights. A major consideration under common benefit analysis is whether the Plaintiffs' lawsuit rendered a benefit to all of the union's members. *Id.*, at p. 8, 93 S.Ct. 1943. Awarding of attorney's fees also facilitates actions to vindicate membership rights, actions which in all probability would not otherwise be brought due to the financial burden. *Id.*, at p. 13, 93 S.Ct. 1943. This Court finds that a substantial service has been rendered to all members of Local 504. It is difficult to see any members that were benefited by the city-wide seniority system in effect during the period 1976–78, while the harm done to members with less seniority who were put on relief status in their beginning apprenticeship years was obviously substantial.

The Court is persuaded that the subsequent change in the collective bargaining agreement, as approved for 1978–80, reinstating area-wide seniority, is directly attributable to this suit brought by Plaintiffs.

Upon motion of Plaintiffs' counsel, Larry Daves, the issue of attorney's fees was severed by the Court. Plaintiffs' counsel has submitted a motion for attorney's fees, and also affidavits in support thereof, but has withdrawn a claim for attorney's fees with respect to Defendant Safeway. The affidavit of Mr. Daves indicates that he expended a total of 76.5 hours in preparation for trial, and, at Mr. Daves' regular fee of $65 per hour, this indicates an award of Four Thousand Nine Hundred Thirteen Dollars ($4,913) for preparation of the case. Because of the complex nature of this labor-relations case, the attorney was required to spend considerable time in research and preparation of this case to the preclusion of other employment by the attorney. Adding a multiplier effect of two for the difficulty and demands on time is appropriate for this § 412 cause. Also, the Court has considered the skill and experience of Plaintiffs' attorney and his professional reputation in the community. The trial of this cause lasted two days, and the Plaintiffs' attorney's fee for trial of $750 per day is found to be reasonable. All of these factors are to be considered by the Court in determining a reasonable attorney's fee in a § 412 cause of action. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir., 1975). The Court awards a fee of Ten Thousand Dollars ($10,000) to Plaintiffs' counsel, and expenses of Two Hundred Thirty-eight Dollars and Sixteen Cents ($238.16).

Judgment, attorney's fees, and expenses, are awarded to the Plaintiffs against AMALGAMATED MEAT CUTTERS' UNION LOCAL 504.